And at this time we'll hear Brown v. City of New York. Good morning. Good morning. Joshua Moskovitz, I represent the appellant Imani Brown. By granting summary judgment after this court previously remanded explicitly for trial, the district court failed to adhere to this court's precise mandate. This court's mandate was clear. Summary judgment was improper on Ms. Brown's excessive force claim because there were disputed material facts. The panel majority expressly held that the facts here, quote, at a minimum preclude a ruling against the victim on a motion for summary judgment, and yet on remand the district court again granted summary judgment on that precise claim. It's clear that the entire panel, even the dissenting opinion, previously understood the mandate as requiring a jury trial. The dissenting opinion noted that the majority, quote, remands for a jury trial. Excuse me. I have a question on that because I'm not clear on your reasoning. It appears to me that what this court held in Judge Newman's opinion was that summary judgment was improper based on the Graham factors. Am I correct? That is correct, Judge Newman. Right. That was what was held. In other words, you could not properly grant summary judgment on the issue of whether or not excessive force was used, correct? That is correct. Isn't it also true that the majority opinion did not rule on qualified immunity as to the excessive force claim? That is correct. The majority opinion did not explicitly rule. It didn't rule at all because it wasn't before it, was it? That's correct. The issue was not raised by the defendants on the prior appeal. And, in fact, our argument is that they had waived it by not raising it sufficiently in their initial summary judgment papers. They did. Well, that's a different question, though. But you would agree that the majority opinion, the opinion of this court, never touched the issue of qualified immunity on the excessive force claim? It never expressly addressed qualified immunity on the excessive force claim. That's correct. Okay. I have one other question on this. There's another aspect to the court of appeals opinion, and that is they held that Imani Brown had waived her claims against the city of New York and hence the grounds for the excessive force claim. The excessive force claim is now only against the two individuals. Am I correct? As to her Section 1983 federal claims, the state law claims were not addressed in the prior appeal because the district court declined to take a supplemental jurisdiction over them after dismissing all of her federal claims. It's our contention, and we argued on remand, that those state law claims, ipso facto, come back into the case because the federal claim was remanded, in which case the claims for the use of force assault state law claims against the city on a respondeat superior basis would still be in the case. But that is not, of course, what the court of appeals held. The court of appeals only addressed the federal claims. Okay. Thank you. Certainly. Can I just follow up on Judge Stanton's questions then about whether we can address the qualified immunity now in light of the prior decision of this court? Are you still invoking the Kerwin decision saying that we're precluded by the mandate rule from doing that? I believe that under Kerwin and other decisions of this court, the district court has no discretion but to carry out the mandate of this court. In this case, the mandate expressly held that a jury trial was required. Whether or not qualified immunity could have been raised during or after the factual issues were presented at a jury trial, I don't believe is foreclosed by this court's mandate. But I do believe the mandate must be faithfully followed in letter and spirit. In this case, it was clear that summary judgment on the excessive force claim was improper. But in Kerwin, what happened was the trial court had granted summary judgment on the basis of qualified immunity. And that's why this court held that you can't revisit that issue in deciding whether it goes to the jury or not, at least questions, subsidiary questions to qualified immunity. Isn't that a fair description in Kerwin? I agree that in Kerwin they expressed the first appeal panel addressed one of the two prongs of qualified immunity, reversed, and sent it back to the district court to hold another trial. And here it is different that the prior panel didn't expressly address qualified immunity. Nonetheless, I believe that the prior panel, again, by expressly remanding for trial, foreclosed qualified immunity on summary judgment because of the factual record before it did not support that and there were material issues of fact. Those material issues of fact are relevant to the qualified immunity question, whether or not the officer's use of force here was gratuitous or unnecessary. What about the clearly established part, though, the second part of the test? Was there any discussion at all in the district court or in this court's, Judge Newman's opinion, that we're addressing whether it was clearly established that this amount of force was not appropriate for police officers at that time? As to the excessive force claim, no, that was not expressly addressed in the prior appeal. This court has noted on a number of occasions, though, that it's not necessary for this court to expressly address an issue to foreclose it. And particularly where specific proceedings are ordered by this court, this court has said the district court has no discretion but to conduct those proceedings. Again, we do not contest that qualified immunity could be raised in the midst or after a jury trial once those factual issues that this prior panel addressed were presented to a jury as this court previously ordered be done. But on summary judgment, there was no proper basis for the district court to do anything other than conduct a jury trial and the necessary proceedings to a jury trial, of course, and then could rule perhaps on qualified immunity depending on the resolution of those factual disputes. Isn't it also true, though, that it's a different standard? You're talking about whether the question of whether excessive force was used is one question. The question of whether or not qualified immunity would shield the two officers from having to go to trial and from potential liability, that's a different question, isn't it, under a different standard? Indeed. There are two different inquiries as to the officer's reasonableness, but the underlying historical facts that could ultimately determine both are in dispute here. This court previously identified two facts that were in dispute, and it is our position that whether the officer's use of force was unnecessary or gratuitous ultimately is a factual issue that will determine both. I'm specifically looking in the Supreme Court's decision in Graham at footnote 12, which I don't know if you're familiar with it, but it does talk about how the standard is looked at differently. In other words, the word objective in one does not mean the same as objective in the other, and the question of whether a reasonable police officer in that situation could have believed that the force being used was not excessive is not the same standard as in Brown. Indeed, the constitutional standard for objective force and whether or not the force used was objectively unreasonable and therefore a constitutional violation is a different inquiry as to whether the officers were reasonable in their apprehension as to whether that force was constitutional or not. But the historical facts that in this case we believe are necessary to be determined can ultimately have a difference in outcome on both of those prongs. So in this case, to the extent that the jury concludes, and we believe there's ample support here that the officer's use of force was gratuitous and unnecessary, we believe not only does that show a constitutional violation in this prior panel of this court held there can be a constitutional violation here, but it would also demonstrate that qualified immunity is inappropriate. And I would point to this court's prior decision in Tracy v. Freshwater in footnote 5 where the court held it was well established at the time of the underlying altercation, in that case it was in the year 2000, that the use of entirely gratuitous force is unreasonable and therefore excessive. So fast forward 11 years, any reasonable officer in 2011 would know that gratuitous and unnecessary force is unconstitutional, and that's a factual inquiry. In Tracy v. Freshwater, the defendant, the plaintiff in the 1983 case, the defendant in the criminal case, was pepper sprayed after he was handcuffed lying on his face. Isn't that a very important fact? Because all of the other parts of Tracy where he was hit with a flashlight, he was tackled, he broke his hip on the fall, qualified immunity was granted or at least allowed by the court in that case. The only issue was whether it was excessive to spray him with pepper spray after he was subdued and he was handcuffed behind the back, right? That is correct, but we are not relying only on Tracy. We're not pointing only to the aspect of the pepper spraying in Ms. Brown's case as the excessive use of force. It's the force that preceded it and the force that led up to the twice being pepper sprayed. This court previously recognized that there was no reason, that's the language of this prior panel, no reason that the officers couldn't have just taken Ms. Brown's arms and placed them behind her back, but instead threw her to the ground. So it's not simply the pepper spraying that we believe demonstrated excessive force and that this court has held on other occasions. It's clearly established that similar uses of force are improper. And I point to, and we cited in our brief, the Robeson decision in which this court held it was a constitutional, or at least a jury could find it was a constitutional violation to yank the arrestee out of her car, throw her against the door, and ultimately throw her against the fender of the car. In that case, she was trying to get away from the officers and drive her car away when they told her not to do that. She had her young children in the car who the officers were trying to take into protective custody. You've reserved a couple minutes rebuttal.  We'll hear you then, sir. May it please the court, Devin Slack on behalf of the appellees. I think with my adversary's concession that the officers could raise the QI defense in the midst of trial explains exactly why it made so much sense for the district court to exercise its discretion to grant qualified immunity now. Qualified immunity is an immunity from suit. It is to be resolved as early as possible. I take issue. To be resolved as early as possible, which I agree. Maybe you can explain why it doesn't seem to have been argued by you the last time around. You know, I wish I had a great answer for that. I didn't think you would. Apologies. I didn't think you would. Yeah, aside from the district court had ruled only on the first prong. It's easy to forget now, but this case wasn't just about excessive force to begin with. A lot of the attention was on false arrest and the First Amendment. To be honest, I wasn't involved in the original appeal. I think qualified immunity was raised with respect to the false arrest. It was, and the First Amendment retaliation. Not as to this. That's correct. I mean, I think a number of us, I think perhaps some members of the court, were surprised by the panel's decision before, because it did break new ground. Everything up to that point had led in the opposite direction, that this would not cross the hazy border between excessive and unreasonable force. But I don't dispute, we could have raised it. This court has held we were not obligated to raise it, and it does not constitute whatever term you want to use, forfeiture waiver. When an appellee does not raise alternative grounds for her affirmance. That could have been resolved. I think when it wasn't, and it goes back to the district court, the district court faced two questions. Do we panel a jury and go to trial just to grant qualified immunity on the same set of facts? And I disagree that there are any disputed facts that are material at this posture. Taking all of the facts that the majority found that a jury could reasonably credit, the officers are entitled for qualified immunity. There's no dispute that the officers here were engaged in a two-and-a-half, three-minute struggle with a noncompliant, resisting suspect. Now, the claim against the city would not be subject to qualified immunity, would it? That's correct. So why aren't you going to trial anyway? The only federal claim still existing is against the officers. The district court, I don't recall if the district court explicitly addressed this in its opinion below, but certainly implicitly declined to exercise supplemental jurisdiction, assuming it reinstated them, which even that is not so far clear. How about the state law claims? No, that's what the state law claims. Okay, so that's against the city? Correct. All the claims against the city are state law claims? I'm sorry? All the claims against the city are state law? That is correct. Originally, there were federal claims that the plaintiffs abandoned in the prior appeal. So this was to follow what the prior panel told us to do. And the prior panel said the assessment of a jury is needed in this case. The majority of that panel said that. Yeah, I think the first thing we're supposed to make of that, I mean, the first thing to bear in mind is not everything in an opinion is the mandate. And that statement has to be read with the other statements made by the majority. A jury will have to decide whether Fourth Amendment reasonableness was exceeded. The district court could not on remand address that question on summary judgment. That would be fundamentally in conflict with this court's prior decision and mandate. But the district court didn't address QI on its first opinion. This court didn't understand the district court to address it. Neither the majority nor the dissent addressed it. It was neither explicitly nor implicitly decided. It was left open. And my adversary concedes that question remains alive and could be raised at trial if on the undisputed facts. If you are correct, then Judge Newman and I basically wasted our time in arguing about this case last time. In light of Pearson, where there is the split between the two prongs and it is now discretionary for the district court, aside from that, I do think it was a dispute that, assuming that Judge Newman and you would have agreed on QI, which I don't know, I would hope so. We don't know, but we cross swords on an issue that you seem, as to which you seem to say never mind. Well, I wouldn't say never mind. I think it is an important issue for the court to decide. Unfortunately, we think the court got it wrong, but officers do need guidance from this court. I think so, too. But what difference does that make? Officers do need guidance as to what are the constitutional limitations on their conduct. They have the guidance. That's the majority opinion. I follow mandates. We all have to. Oh, correct. I just want to assure Your Honor that it was not a complete waste of the court's time. That's reassuring. We do wish that the court had come out differently. That was a meaningful answer, but the officers are entitled to qualified immunity, whether now or at trial. There's no need to waste the district court's time on top of whatever time of this court's that had been wasted. If it had not been litigated, raised by either party below or on the prior appeal, it was not squarely put in issue by the plaintiff either. Let me just ask you about going forward after the first panel's decision. The first panel didn't decide this was excessive force. It decided that a jury should weigh the gram factors and determine whether it was excessive force. In other words, after the first panel decision here, it's not the second prong of qualified immunity established. It's now clearly established that that amount of force used in arresting Ms. Brown is excessive. You know what I mean? It's an interesting question. I actually do not know what posture works for making clearly established law, but I take your point that the only finding of this court was that on the facts that a jury could reasonably credit, they could go either way. It is still an open question. The only last thing I would say is that just as a general rule aside from this one case, as other circuits have held, there is also a judicial efficiency point on the other side of that argument to require appellees to raise every single alternative ground for affirmance on appeal. In some cases, that might benefit, and often, particularly in the qualified immunity context, parties will raise them, but to require all issues to be raised is not something this court has done. It's not really requiring all issues to be raised if you suggest that the sensible thing is to make the argument that in terms of the standards would be easiest for the city to make. Instead, to argue the harder proposition. I don't know, until this panel's decision before, this court's decision before, I don't know if that was the harder decision. I mean, it is not. Qualified immunity is always easier. It is when you're dealing with the kind of mistake of fact, extra give that goes on, but when you're asking the question of what was clearly established at the time, it is a fundamentally different inquiry. And I do think you might disagree that we needed all the words in our brief here, but it takes quite a bit to lay out what the Supreme Court has done here, what the state of the law was at the time. There were a number of claims and a number of issues at issue on this prior appeal, but I don't dispute that it's something that either party could have raised and could have very well ended up with a more efficient outcome, and the district court could have decided it in the alternative as well. The situation we face now, and I see that my time is almost up, the district court was given the choice of either moving forward inefficiently or cutting off the action at a point that makes sense and honoring the principles of qualified immunity. If there are no further questions, I thank the court for its time. Thank you. Yes, sir. Briefly, I'll respond to the judicial efficiency argument. My colleague faults us for not raising qualified immunity ourselves in the prior appeal. There's no basis for why on earth you would have done that. There's no reason we would have done that. It's an affirmative defense. We were appellants. But I also say that I believe it's rather clear in our view that judicial efficiency cuts in favor of us. If the defendants in this case are not required to raise qualified immunity and it's not an abstract defense that comes up infrequently, it's a ubiquitous defense in 1983 suits, then what you can likely expect is two appeals in any Section 1983 case. There will be an initial appeal on grounds of the constitutional violation followed by a subsequent appeal on qualified immunity because there would be nothing that would prevent the defendants from simply arguing in the first instance there was no constitutional violation, see if they prevail there, and if it goes on appeal and if they come back, then now they can raise qualified immunity. And that's entirely inefficient and a waste of time. What do you say to Judge Forrest's argument that the idea that this was excessive force could not have been clearly established because while two judges thought a jury should decide it, two judges who were both reasonable thought that it was not excessive force. Now, putting me aside, I assume that Judge Forrest is reasonable. There's two aspects to my response. One is Judge Forrest is certainly reasonable, but her view on this was overruled by a majority of this court. The second reason why that argument... Did they reach the issue of clearly established? Because as you point out, you didn't raise qualified immunity, no reason you would have, and the other side, for reasons that are mysterious, didn't either. No, but the majority of this court reversed Judge Forrest's view that the force used here was not unconstitutional. No, the majority of the court said that there are issues of fact concerning that. They didn't say it is as a matter of law excessive. That's correct, that a reasonable jury could find that. But here's the more important response to that argument, which is if it's true that any time a judge, a reasonable judge, concludes that there's not a constitutional violation that requires qualified immunity as a matter of course, then this court could never reverse any district court's decision that there was not a constitutional violation. It would be required to grant qualified immunity, and I can point to several occasions in which this court has reversed a district court's determination that there was no constitutional violation and denied qualified immunity. One is Tracy v. Freshwater, where the magistrate and the district judge both concluded that there was no constitutional violation, and this court not only reversed that determination but also denied qualified immunity. This court in Robeson, there was a dissenting opinion, which the judge, I think it was Altamari, argued there was no constitutional violation, would have concluded that, but the majority held not only was there a reasonable view of the facts that there was a constitutional violation but also that qualified immunity was improper. There are other occasions in which this court has denied qualified immunity over a contrary view of the constitutional claim. There's law on Judge Farr's side as well, although I certainly grant that your argument has force. I just don't know how it breaks down or how it comes out. In our view, it certainly can't be the case that one or even two judges who subsequently their opinions are not. Both of them reasonable. Both of them very reasonable, but are ultimately in the minority in the law of the case, can't control for that issue. Thank you. Thank you both. We'll reserve decision.